(11 P.3d 530)
No. 84,559

ASCENCION SCHULTZ, *Appellant*, v. HOWARD SCHWARTZ and JAY E. COFFMAN, *Appellees*.

Opinion filed October 20, 2000.

*Jerry K. Levy*, of Lawrence, for the appellant.

*Alan Varner* and *John R. Dowell*, assistant attorneys general, and *Carla J. Stovall*, attorney general, for the appellees.

Before PIERRON, P.J., LEWIS, J., and PAUL E. MILLER, District Judge, assigned.

MILLER, J.: Appellant, Ascencion Schultz, intended to sue an individual for injuries resulting from a car accident. The petition to initiate the suit was mailed to the clerk of the Douglas County District Court in Lawrence on Thursday, January 15, 1998. The petition was mailed from the office of the appellant's attorney, Jerry Levy, also located in Lawrence. The statute of limitations for the

cause of action expired on Tuesday, January 20, 1998. The courts were closed January 17 through January 19, 1998, for the weekend and the observance of the Martin Luther King holiday. There was no mail service on Sunday, January 18, or Monday, January 19, 1998. The petition was file-stamped by the clerk's office on January 21, 1998, 1 day after the running of the statute of limitations. The exact date the petition arrived at the clerk's office could not be ascertained with complete certainty, although circumstantial evidence indicates that it did not arrive until January 21, 1998.

The appellant then filed suit against the appellees, Jay Coffman, Clerk of the Douglas County District Court, and Dr. Howard Schwartz, Judicial Administrator for the State of Kansas, alleging they were negligent in training, staffing, and supervising the clerk's office, which resulted in the late filing of the appellant's suit and loss of that cause of action. The appellant took the position that based on previous experience, the petition must have arrived at the clerk's office no later than January 20, 1998, and only the negligent failure of court personnel to immediately file-stamp the petition could explain the late filing.

The first issue raised by the appellant is that district trial court erred in determining the respective duties of the appellees. Whether a duty exists is a question of law, independent of the specific facts of the case, so appellate review is de novo. *McCleary v. Boss,* 24 Kan. App. 2d 791, 792, 955 P.2d 127(1997).

With respect to Coffman's duties, it is apparent that the appellant either misinterpreted or simply did not understand the district court's conclusions of law. She argues that the clerk's office has a duty to timely file all documents and alleges that the court found that the clerk had no such duty. However, in its conclusions of law in the journal entry, the court clearly stated: "The Clerk of the District Court has a duty to make sure his office timely files documents." In its subsequent journal entry following rehearing, the court further stated that Coffman had the duty to ensure that his office was run properly, a conclusion which supplemented rather than contradicted the court's earlier ruling. The court granted summary judgment and held that both duties were performed properly.

Thus, there is no disagreement between the appellant's position and the conclusions of the trial court on the issue of Coffman's duties. Indeed, the law is quite clear that a clerk of a district court has the duty to file and stamp with the date and time, all documents received on the day of receipt. K.S.A. 60-2601(d). The appellees do not argue otherwise, and the trial court's ruling is in no way contrary.

The appellant also contends that Schwartz has a duty to oversee the operations of the various district court clerks' offices, which includes ensuring the timely stamping and filing of documents. The trial court found that Schwartz "has no duty to train, supervise or staff the Office of the Clerk of the Douglas County District Court." Whether such a duty exists is a question of law. 24 Kan. App. 2d at 792.

Under K.S.A. 20-318, the judicial administrator is responsible for implementing the policies of the Kansas Supreme Court with respect to the operation and administration of the lower courts and for such other duties as are assigned by law, the Supreme Court, or the Chief Justice. The specific duties of the judicial administrator are found in subsection (c) of Rule 1.03 of the Kansas Supreme Court Rules. Those articulated duties include supervising and examining the "administrative methods and systems employed in the offices of the district courts, including the offices of the clerks and other officers, and making recommendations to the Supreme Court for the improvement of administration of said courts." Rule 1.03(c)(5) (1999 Kan. Ct. R. Annot. 2).

In practice, the judicial administrator does not oversee the day-to-day operations of the various court clerks' offices. The judicial administrator's office only looks into the operations of a specific clerk's office if a complaint is filed. The general supervisory authority over the day-to-day clerical and administrative functions of the court clerk's office lies with the chief judge of the judicial district. K.S.A. 1999 Supp. 20-329. The court clerk is appointed by the chief judge of the district, with the approval of a majority of the other district judges. K.S.A. 1999 Supp. 20-343. While there is no statutory provision for the training of court clerks and their personnel, logic leads to the conclusion that since the appointing

and supervisory authority lie with the chief judge of the district, overall responsibility for training also lies with the chief judge. The judicial administrator has no role in the training of court clerks and their personnel except for providing some basic logistical and administrative support for training events.

There is no authority for the appellant's position that the judicial administrator has a direct supervisory role over the various clerks of the district courts and their personnel. While the judicial administrator does have some oversight responsibilities, the general supervisory authority for day-to-day operations lies with the chief judge of the district court. It stretches reason to suggest that the judicial administrator has a direct responsibility to ensure that the mail in a specific clerk's office is opened and documents are stamped. The trial court was correct in determining that Schwartz had no such duty.

The appellant argues there was a genuine issue of material fact—whether the petition arrived on time and whether Coffman breached his duty by not ensuring that it was promptly filed—which should have precluded summary judgment.

Under K.S.A. 1999 Supp. 60-256(c), summary judgment is only proper if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A genuine issue of fact exists only if a controverted fact has controlling legal force as to a controlling issue. *P.W.P. v. L.S.*, 266 Kan. 417, 423, 969 P.2d 896 (1998) (quoting *Seabourn v. Coronado Area Council, B.S.A.*, 257 Kan. 178, 189, 891 P.2d 385 [1995]). In other words, " '[i]f the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of a material fact.' " *P.W.P.*, 266 Kan. at 423. The burden of proving that no genuine issue of material fact exists is on the moving party. *Glenn v. Fleming*, 247 Kan. 296, 304, 799 P.2d 79 (1900). However, in opposing a motion for summary judgment, the adverse party must come forward with some evidence to establish a material dispute of fact. 247 Kan. at 305.

In ruling on a motion for summary judgment, "[t]he trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the

ruling is sought." *Bacon v. Mercy Hospital of Ft. Scott*, 243 Kan. 303, 306, 756 P.2d 416 (1988). On review, appellate courts apply the same rule, and where "reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." 243 Kan. at 306.

Because the appellees filed the motion for summary judgment, the burden was on them to prove that no genuine issue of material fact existed. They submitted a list of uncontroverted facts, including that the petition was mailed from Levy's office on January 15, 1998; on the evening of January 20, 1998, an employee of the court clerk, Terri Kilburn, opened and file-stamped all civil petitions that arrived in the mail that day; Kilburn opened the mail on January 21, 1998, and it was on that date she first saw the appellant's petition; and the petition was filed on January 21, 1998. To support their list of uncontroverted facts, the appellees submitted the affidavit of Kilburn, which stated she was the employee responsible for opening and filing civil petitions and confirmed the above-stated facts.

The appellant attempted to controvert the facts submitted by the appellees, arguing that the time the petition actually arrived at the clerk's office was in dispute. The appellant's position was that the petition could not have arrived later than January 20, 1998, and the clerk's office was negligent in failing to file it at that time. However, to preclude summary judgment, the party in opposition must do more than simply allege the facts are controverted. The adverse party must come forward with probative evidence to establish a dispute of material fact. *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 131, 955 P.2d 1189 (1998) (citing *Glenn v. Fleming*, 247 Kan. 296, 305, 799 P.2d 79 [1990]; *Slaymaker v. Westgate State Bank*, 241 Kan. 525, 531, 739 P.2d 444 [1987]). "Probative evidence is that which 'furnishes, establishes or contributes toward proof.'" *Saliba*, 264 Kan. at 131 (quoting *Akin v. Estate of Hill*, 201 Kan. 306, 311, 440 P.2d 585 [1968]).

In support of her position, the appellant submitted Levy's deposition testimony, which stated something to the effect that in his experience in mailing items to the clerk's office, the petition should have arrived by January 20, 1998. Levy also stated that upon learn-

ing about the late filing, he called the clerk's office to find out what happened and was told by an unnamed person that there was a large volume of mail after the holiday and the petition apparently did not get filed. Levy also stated that since that time, he has kept track of when documents are filed following mailing from his office and found that they are always filed the next business day.

The question before this court is whether the appellant has presented probative evidence establishing a genuine issue of material fact. The statement by Levy that based on his experience, the petition should have arrived on time is not really evidence. It is an opinion and not the type of opinion that establishes or contributes to proof of the fact allegedly controverted. Granting that, based on his experience, Levy is qualified to state an opinion on the matter, the fact that the petition *should* have arrived on time in no way establishes or helps to establish that it *did* arrive on time. What happened on prior occasions is in no way dispositive of what happened on this occasion.

Levy's testimony that some unnamed person at the clerk's office told him that the petition did not get filed on time because of the volume of mail is, of course, hearsay. However, that in itself does not render the testimony devoid of probative value because the rules of evidence recognize the probity of various types of hearsay. In *Mastin v. Kansas Power & Light Co.*, 10 Kan. App. 2d 620, 624, 706 P.2d 476 (1985), it was held that admissible hearsay was sufficient to establish a genuine issue of material fact, precluding summary judgment.

The problem with Levy's hearsay statement is that it is not admissible hearsay. It does not fit into any of the recognized hearsay exceptions. None of the various indicia of reliability that provide the basis for the hearsay exceptions are present. The statement is not only uncorroborated, it is completely incapable of being corroborated. There is no way of knowing who made the alleged statement or what was actually said. Unlike the Kilburn affidavit submitted by the appellees, there is no way to bring the declarant before the court to confirm or explain the statement. The statement would not be admissible at trial. It would make no sense to

deny summary judgment and proceed to trial on the basis of evidence that could not be presented at trial.

Finally, Levy's testimony regarding his subsequent tracking of mailed documents and their filing dates is no more probative than his "previous experience" which led him to opine that the petition should have arrived on time. By relying on this, the appellant has fallen prey to the fallacy of *ignoratio elenchi*—reliance on irrelevant evidence proving an unrelated point instead of the point at issue. The fact that subsequently mailed documents arrived at their destination in a day or so in no way proves that the petition in question was delivered in the same time frame. It only proves the transit time of the documents thus tracked. This does not establish or contribute to the proof of the date on which the petition in question arrived and, thus, is not probative evidence in that regard.

The district court was left with Kilburn's sworn affidavit stating that (1) she filed all petitions received on January 20, 1998; (2) when she left the clerk's office on January 20, 1998, there were no civil petitions waiting to be filed; and (3) the appellant's petition was among those she filed on January 21, 1998. These facts are uncontroverted. Levy's opinion of when the petition should have arrived and his subsequent tracking of mailed documents do not in any way contradict Kilburn's affidavit. The hearsay statement of some unknown person at the clerk's office is not reliable, probative evidence that could be admitted at trial. Even when viewed in the light most favorable to the appellant, the statement does not actually furnish proof that the petition arrived earlier than January 21, 1998; it only establishes that there was a large volume of mail on January 20, 1998. The appellant failed to come forward with probative evidence to establish a genuine issue of material facts.

The only inference that can be reasonably drawn from the facts before us is that the petition did not arrive at the court clerk's office until January 21, 1998. That being the case, the petition was timely filed on the day it arrived. Neither Coffman nor any of the court clerk's personnel were negligent in their duties. The appellees were entitled to summary judgment as a matter of law.

Because we conclude that the trial court was correct in concluding that Schwartz had no legal duty to the appellant herein and

that Coffman was not negligent in the filing of the petition on the day the uncontroverted evidence suggests it was received, we need not reach the issue of whether either of the appellees is entitled to discretionary immunity under the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq*.

Affirmed.