(29 P.3d 431)
No. 85,126

IN THE MATTER OF THE APPLICATION OF ALLEN, GIBBS & HOULIK, L.C., FOR EXEMPTION FROM AD VALOREM TAXATION IN SEDGWICK COUNTY, KANSAS.

Opinion filed August 3, 2001.

*William E. Waters*, of Kansas Department of Revenue, for appellant Division of Property Valuation.

*Patricia J. Parker*, assistant county counselor, for appellant Board of Sedgwick County Commissioners.

*G. N. (Jerry) Capps*, of Wichita, for appellee Allen, Gibbs & Houlik, L.C.

Before GREEN, P.J., KNUDSON, J., and PHILIP C. VIEUX, District Judge, assigned.

KNUDSON, J.: The Kansas Department of Revenue's Division of Property Valuation (PVD) and the Board of County Commissioners of Sedgwick County, Kansas (County), appeal from the grant

of summary judgment by the Kansas Board of Tax Appeals (BOTA) to Allen, Gibbs & Houlik, L.C. (taxpayer). BOTA concluded the taxpayer is entitled to a property tax exemption for 43 computer keyboards purchased to replace defective keyboards. We affirm BOTA's decision.

PVD and the County contend a replacement computer keyboard is a component part of a computer and not an "item" as that word is used in K.S.A. 2000 Supp. 79-201w. In a unanimous decision, BOTA disagreed and found a replacement computer keyboard is an "item" and the keyboards are exempt from taxation.

Two issues are raised on appeal: (1) whether summary judgment was proper, and (2) whether BOTA correctly interpreted K.S.A. 2000 Supp. 79-201w.

K.S.A. 2000 Supp. 79-201w states, in material part:

"The following described property, to the extent specified by this section, shall be exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:

"(a) Any item of machinery, equipment, materials and supplies which, except for the operation of the provisions of this section, would be required to be listed for the purpose of taxation pursuant to K.S.A. 79-306, and amendments thereto, and which is used or to be used in the conduct of the owner's business, or in the conduct of activities by an entity not subject to Kansas income taxation pursuant to K.S.A. 79-32,113, and amendments thereto, whose original retail cost when new is $250 or less."

PVD's contention that the keyboards are not exempt is based upon PVD Directive No. 95-030, which was issued for the benefit of county appraisers. See K.S.A. 79-505. The directive provides, in material part:

"The purpose of this directive is to define the term 'item' for purposes of the new exemption. The Director takes the position that an interpretation of an 'item' should begin with the Tangible Personal Property Ad Valorem Tax Return (Form PV-PP-2E, hereinafter referred to as a 'rendition'), which was an express concern of the legislature.

"The Director takes the position that *as a general rule*, a line-item on an acceptably filed rendition is the equivalent of an item for purposes of the new exemption. However, the Director recognizes that taxpayers vary in reporting practices due to differing purchasing procedures and styles.

"Consequently, some adjustments to this general rule must be made in order to place taxpayers on more equal footing."

The directive then provides rules and illustrations as to what is or is not an "item," including:

"*Second,* if a single line-item represents a good that must be used in conjunction with other goods in order to serve its purpose or function, the line-item is not an item. Rather, the line-item represents only part of an item. For example, if a taxpayer lists a 'computer keyboard' as a line-item on the rendition, the line-item does not constitute an entire item. The computer keyboard cannot serve its purpose or function without the remainder of the computer system; therefore, the keyboard is part of a computer system. The computer system is the item. The keyboard and its other components, even though they may be separately identified and listed on the rendition, are merely parts of an item."

The taxpayer takes issue with PVD's definition of "item." The taxpayer contends K.S.A. 2000 Supp. 79-201w is unambiguous and that the plain meaning of "item" includes distinct property that becomes part of a whole.

In granting the taxpayer's motion for summary judgment, BOTA stated:

"6. The applicant purchased the computer keyboards to replace defective keyboards in the applicant's possession. The applicant purchased these keyboards separately from any computer system. The applicant listed these keyboards on the personal property rendition as exempt items. The retail cost when new of the keyboards is $250 or less. The County, relying upon PVD Directive No. 95-030, informed the applicant that the keyboards were not exempt. Neither the County, nor PVD dispute these facts.

"7. There do not appear to be any facts in dispute as to the cost of the personal property. The only issue before the Board is whether or not the computer keyboards are 'items.' PVD Directive No. 95-030 attempts to define the term 'item.' The directive indicates that a piece of personal property is not an 'item' if it can not perform its function independently without use of another good. The directive provides the example of how a computer keyboard is not an item because the keyboard can not perform its function without the remainder of the computer system. The Board finds the parties have presented a question of law, so the applicant's motion for summary judgment is ripe.

"8. The applicant asserts that the computer keyboards are items. The applicant notes that the term 'item' is not defined in K.S.A. 79-201w, and amendments thereto. However, the applicant did cite to a definition of the term 'item' from *Webster's New International Dictionary, Unabridged.* All of the definitions provided by the applicant appear to indicate that an item is merely a part of

the aggregate. The applicant asserts that statute is unambiguous. Therefore, the applicant asserts, the Board need not look at the legislative history, but rather the plain meaning of the words. The applicant requests that the Board look at the plain meaning of the term 'item.'

"9. The applicant asserts that PVD's directive is too broad and would have a disparate impact on the merchant's and manufacturer's inventory exemption granted pursuant to K.S.A. 79-201m, and amendments thereto. The applicant notes that K.S.A. 79-201m, and amendments thereto, grants an exemption for 'items' of personal property held as inventory. The applicant asserts that if the Board applies PVD's definition of the term 'item,' then merchants and manufacturers who sell computer keyboards must report those keyboards on their rendition.

"10. The applicant finally asserts that the Board has already rejected PVD Directive No. 95-030. See *In the Matter of the Application of TCI of Overland Park, Inc.*, Docket No. 1997-4756-TX; *In the Matter of the Application of Chronicle Broadcasting of Wichita*, Docket No. 1999-4377-TX. The applicant asserts that the facts in the *TCI* application are analogous to the current application. The applicant notes that *TCI* was requesting an exemption for converter boxes used to decode signals for cable television. The applicant notes that in *TCI* the Board rejected the County's argument that tangible personal property was not an 'item' if it was a component of a system.

"11. PVD asserts that when interpreting a statute, the parties must try to determine what the Legislature was thinking when the statute was drafted. PVD asserts that there were two reasons the Legislature passed K.S.A. 79-201w, and amendments thereto. First, the statute was to be taxpayer friendly. The statute would not require taxpayers to render such items as paper clips, tape dispensers, etc. The second reason was that the Legislature believed the statute would be revenue neutral. The belief was that if taxpayers were not required to render paper clips and tape dispensers, the counties would have to perform few audits.

"12. PVD asserts the legislative history of the statute indicates an amendment was proposed that would define 'item' as the applicant has proposed to define the term. PVD notes the amendment was not passed. PVD asserts there is an inference that if the amendment was not passed, then the Legislature did not intend to [define] 'item' in the manner suggested by the applicant. PVD asserts that if the Legislature does not define the term, then the parties who enforce the statute are expected to define the term.

"13. PVD asserts that if the Board adopts the applicant's definition of 'item,' then taxpayers will break down the item as far as possible to report the 'item.' PVD notes taxpayers will not render a computer system, but rather will render a monitor, a keyboard, etc. PVD asserts that such an interpretation would not be revenue neutral, as the Legislature had intended the statute to be. PVD asserts that the Legislature feared taxpayers would break down 'items' in terms of component parts to the point of nuts and bolts. The end

result would be taxpayers would have no personal property to render for taxation purposes.

. . . .

"16. The Board notes that:

The law in Kansas is well settled that interpretation of statutes is a question of law and this court's review of questions of law is unlimited. The overriding principle of statutory construction is that the intent of the legislature governs if that intent can be ascertained from the plain language of the statute. When the statute is plain and unambiguous, the court must give effect to the intent of the legislature. If, however, the interpretation of one section of an act based on its plain meaning would contravene the purpose of the legislature, the entire act should be construed according to its spirit and reason. When an act is clear on its face, there is no need to consult legislature history or extrinsic materials. *Gehring v. State*, 20 K.A.2d 246, 248, 886 P.2d 370 (1994) (citations omitted) *review denied* (February 8, 1995).

"17. The Board finds that it is unnecessary to examine the Legislative history of K.S.A. 79-201w, and amendments thereto. The Board notes that it agrees with PVD's assertion that if the Legislature does not define a term, then the agency responsible for enforcing the statute would define the term. However, the Board, as the highest administrative tribunal in the State of Kansas, finds that it is the agency responsible for ultimately defining the term 'item' because the Board has jurisdiction over all tax exemption requests. See 79-213, and amendments thereto.

"18. The board also agrees with PVD that when defining a term in a statute, deference must be given to what the Legislature intended. As PVD noted, the statute was intended to be taxpayer friendly and revenue neutral. The Board disagrees, however, with PVD's assertion that defining the term 'item' in the manner proposed by the applicant is inconsistent with the Legislature's intent. Furthermore, the Board is not persuaded by PVD's assertion that taxpayers will begin to break down personal property down to nuts and bolts. First, the taxpayer would have no evidence to support such claims of cost. For example, a taxpayer would have a difficult time demonstrating the cost of each piece of his or her $1,000 desk. Second, such a cost breakdown, if it could be demonstrated, would appear to be cumbersome and expensive.

"19. If the purpose of K.S.A. 79-201w, and amendments thereto, is to be taxpayer friendly and reduce the need for audits, the applicant's definition of 'item' appears to meet that goal. It would be difficult for taxpayers to report the component parts on the rendition or be able to determine if the county had correctly determined the value. Typically, an item of personal property is depreciated for a set number of years. After the item has been depreciated for the term of years, the item is left on the assessment rolls at 20 percent of its original value. However, if the Board were to adopt PVD's analysis, a taxpayer could be subject to double taxation. For example, a taxpayer with a complete computer system, including the CPU, monitor, and keyboard,

would not be forced to report the newly purchased replacement keyboard. The retail cost when new of the keyboard would be added to the remaining value of the computer system. It would appear, though, that the cost of the original keyboard should be subtracted from the value of the computer system. If the computer system was purchased as a package deal, i.e. there was no price listed for each component part, then the taxpayer would not be able to provide that information to the County for the appropriate subtraction. In essence, the taxpayer would be taxed for two keyboards. If that were to occur, taxpayers may start underreporting the costs of certain component parts to compensate the possible double taxation.

"20. The Board finds no support for PVD Directive 95-030 in this exemption request. The term 'item' is not an ambiguous term that requires an extensive research into the legislative history. Furthermore, the legislative history appears to support the applicant's request. The applicant's interpretation of K.S.A. 79-201w, and amendments thereto, is very taxpayer friendly and would remain revenue neutral. The Board is not persuaded that taxpayers would begin to break down tangible personal property into screws, nuts, and bolts. Such action could not be documented for reporting, nor would be cost-effective. Finally, the request by the applicant in this matter is not unreasonable. In this instance, the applicant can demonstrate that the retail cost when new of the keyboard is $250 or less. The keyboard is a separately sold item with a defined cost."

Motions for reconsideration were considered and denied by the Board. Both PVD and the County have made a timely appeal. We have jurisdiction under K.S.A. 2000 Supp. K.S.A. 74-2426(c)(3).

## Ripeness For Summary Judgment

The PVD and the County claim there are facts in dispute, they were denied a hearing that is required by statute, and the PVD claims it had not had an opportunity to commence discovery; therefore, summary judgment was not proper.

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could

differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999).

"Ordinarily, summary judgment should not be granted when discovery is incomplete." *Bank IV Wichita v. Arn, Mullins, Unruh, Kuhn & Wilson*, 250 Kan. 490, 498, 827 P.2d 758 (1992). However, if the facts pertinent to the material issues are not controverted, summary judgment may be appropriate even when discovery is unfinished. See *Parker v. Farmway Credit Union*, 11 Kan. App. 2d 223, 227, 718 P.2d 643, *rev. denied* 239 Kan. 694 (1986). A case is ripe for adjudication when the disagreement has taken a final shape and the court can see the legal issues it is deciding, including the impact of the decision upon the adversaries. *Department of Revenue v. Dow Chemical Co.*, 231 Kan. 37, 41, 642 P.2d 104 (1982).

The PVD and the County allege there is a material question of fact regarding the original cost of the keyboards. The County raised this concern in its response to Taxpayer's motion for summary judgment, but by the time oral arguments were held, the County agreed that the keyboards were subject to exemption, depending upon the legal interpretation of the word "item." The County stated:

"As far as whether this is ripe for summary judgment, Jerry did provide information that cleared up some of my issues. And my other concerns were that I could not match up—we could not match up some invoice numbers with—with the descriptions that he—he gave in his application. But I—I think if that is the only remaining issue then as long as we can match up the invoice to the item in the application, I'm not going to have a problem with that. We just—we will just have to apply and those—review those invoices and if we could not match—if after getting together we could not match them, we'll get an explanation or get clarification then I suppose we would have to come back to the Board on that. But I think most of my concern has been addressed regarding the additional discovery."

Taxpayer added: "I've tried to resolve the factual differences. Although the factual issues do not preclude summary judgment on the legal issues that we presented. We can hammer out factual issues later. The legal issue is—is the one that's of paramount importance at this time."

There is no indication in the record that any further information was sought. "[I]n opposing a motion for summary judgment, the adverse party must come forward with some evidence to establish a material dispute of fact." *Schultz v. Schwartz*, 28 Kan. App. 2d 84, 87, 11 P.3d 530, *rev. denied* 270 Kan. 900 (2000).

In its reply to the motion for summary judgment, the PVD alleged controverted facts existed because it had not commenced pretrial discovery. It did not bring forth any conflicting evidence. BOTA set a telephone conference to discuss discovery, witnesses, and other matters. There is no record of that conference, but after the hearing, BOTA issued a memorandum clearly stating the parties had agreed "that only a legal issue remains for the applications." At oral arguments, counsel for PVD stated: "I think the issue that's before the Board clearly is a question of law." Based on the record, there was no actual dispute between the parties that the keyboards were purchased for less than $250, and this finding was reflected by BOTA's order. The PVD did not make any specific discovery requests on the record and agreed only a legal argument existed for the hearing. It must be precluded from claiming it was denied discovery. The County also abandoned its claim and is also precluded from raising the issue. See *Catholic Housing Services, Inc. v. State Dept. of SRS*, 256 Kan. 470, 476, 886 P.2d 835 (1994).

The PVD also argues it was denied a hearing under K.S.A. 2000 Supp. 79-213(g). This statute provides:

"After examination of the request for exemption, and the county appraiser's recommendation related thereto, the board may fix a time and place for hearing, and shall notify the applicant and the county appraiser of the time and place so fixed. . . . In any case where a party to such request for exemption *requests* a hearing thereon, the same shall be granted. Hearings shall be conducted in accordance with the provisions of the Kansas administrative procedure act. In all instances where the board sets a request for exemption for hearing, the county shall be represented by its county attorney or county counselor." (Emphasis added.)

In the initial application, the county appraiser did not request a hearing on the exemption request. Taxpayer specifically stated it did not request a hearing on the matter. The PVD admits it did not request a hearing, yet it argues it did not waive a hearing. K.S.A.

2000 Supp. 79-213(g) clearly requires a party in an exemption proceeding to *request* a hearing. Neither PVD, Taxpayer, nor the County requested a hearing in any of their motions or responses contained in the record. Additionally, it is apparent to us that the parties were granted an appropriate hearing if summary judgment was a proper remedy. Because we believe that it was, PVD's claim of being denied a hearing rings hollow.

## Interpretation of K.S.A. 2000 Supp. 79-201w

The resolution of this appeal involves the interpretation of K.S.A. 2000 Supp. 79-201w. An interpretation of a statute is a question of law, and this court's scope of review is unlimited. See *In re Tax Appeal of Boeing Co.*, 261 Kan. 508, Syl. ¶ 1, 930 P.2d 1366 (1997).

"It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. [Citation omitted.] The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. [Citation omitted.] Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. [Citation omitted.]" *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998).

" 'The rule of strict construction means that ordinary words are to be given their ordinary meaning. Such a statute should not be so read as to add that which is not readily found therein or to read out what as a matter [of] ordinary English language is in it.' " *In re Tax Appeal of Alex R. Masson, Inc.*, 21 Kan. App. 2d 863, 868, 909 P.2d 673 (1995) (quoting *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 455, 691 P.2d 1303 [1984]). Constitutional and statutory provisions exempting property are to be strictly construed. Taxation is the rule; exemption is the exception. All doubts are to be resolved against exemption and in favor of taxation. *In re Tax Appeal of Univ. of Kan. School of Medicine*, 266 Kan. 737, 751, 973 P.2d 176 (1999).

BOTA is a specialized agency that is charged with the duty to decide taxation issues. Its decisions are ordinarily given great

weight and deference when it is acting within the scope of its expertise. See *In re Tax Appeal of Univ. of Kan. School of Medicine*, 266 Kan. at 749. If there is a rational basis for the Board's interpretation of a statute within its field of expertise, it should ordinarily be upheld on review. *McTaggart v. Liberty Mut. Ins.*, 267 Kan. 641, 645, 983 P.2d 853 (1999). However, here we have disagreement between two administrative agencies as to the interpretation of K.S.A. 2000 Supp. 79-201w. Under these circumstances, we respect the position of each agency but recognize the final construction of a statute rests with the judiciary. *In re Tax Appeal of Alsop Sand Co., Inc.*, 24 Kan. App. 2d 527, 530, 948 P.2d 667 (1997), *aff'd* 265 Kan. 510, 962 P.2d 435 (1998).

We have quoted at length from the Board's final order that supports the taxpayer's interpretation of "item." Essentially, the Board found that notwithstanding the lack of a statutory definition, "item" has an ordinary meaning that is readily understood. We agree. An "item" is defined as "one of the distinct parts of a whole." Webster's Ninth New Collegiate Dictionary 643 (1984). Likewise, in Black's Law Dictionary, "item" is defined as "[a] piece of a whole, not necessarily separated." Black's Law Dictionary 837 (7th ed. 1999). We adopt the Board's conclusion that a review of nebulous legislative history is not necessary to provide us with a common and readily understood definition of "item." We conclude the Board correctly interpreted K.S.A. 2000 Supp. 79-201w.

The PVD makes a rather tepid and confusing argument that the Board's interpretation of the statute results in partial tax exemptions, which are unconstitutional. See *State ex rel. Stephan v. Parrish*, 257 Kan. 294, 311, 891 P.2d 445 (1995). It claims that under BOTA's definition, some computers are partially exempt and others are fully taxable. This is not correct. BOTA's interpretation allows an exemption for *any* piece of personal property that may or may not constitute a whole mechanism. In other words, if a computer system is purchased as one piece and the individual components are not selected individually and the system is one complete package and invoiced as one price, then, unless the total cost of the entire system is less than $250, the taxpayer is not entitled to an exemption. But, if the system is purchased as most systems

are, by individually selecting a monitor, keyboard, mouse, etc. separately with itemized invoicing, then each item under $250 would be exempt. Further, in this particular case, the keyboards were replacement keyboards; they were purchased totally separate from the original system and were properly granted exempt status.

Finally, a review of legislative history is not persuasive evidence that the Board's interpretation of the statute is erroneous. As we have already suggested, the legislative history, such as it is, can be read to support nearly any interpretation one wishes to advance. Nevertheless, in the interests of completeness, we will briefly consider the statute's genesis.

K.S.A. 2000 Supp. 79-201w began as House Bill 2108. The bill was created as a result of reactions to a 1993 memorandum sent by the PVD to all the county appraisers suggesting they check personal property tax renditions to ensure proper tax collection. As a result of the memo, counties realized taxes had not been collected properly and some taxpayers were found to be delinquent, resulting in significant penalties and interest. The delinquencies were traced to nonreporting of small, insignificant items, such as paper clips, rubber bands, and the like. The stated purpose of the bill was to greatly simplify operations for small businesses across the state by establishing a "de minimis amount or threshold" amount that would be subject to exemption. The bill was intended to alleviate "some of the reporting burden imposed upon taxpayers who must file a rendition for ad valorem tax purposes." Initially, the exemption threshold was set at $2,500. This number was lowered because of the negative economic impact such a large exemption would have on the tax base.

Bob Corkins, representing the Kansas Chamber of Commerce and Industry, explained the administrative burden on small business is "unrealistic, overwhelming, and even counterproductive from a tax collection perspective when [small business owners] are forced to track items of negligible value." Corkins noted the bill did not define the term "item" and presented a proposed balloon amendment which included a definition. That definition reads:

"As used in this section, an 'item' of property shall, in the case of machinery and equipment, consist of any mechanism and those of its components which play a

direct, integral, and essential part in the mechanism's operation in a commercially useful or productive application. In the case of materials and supplies, an 'item' of property as used in this section may consist of any collection of like materials or supplies in any such quantity that is ordinarily made available for sale."

This definition considers the mechanism *and* its parts to be an "item." The PVD incorrectly argues this definition is identical to the one suggested by Taxpayer and adopted by BOTA. The use of the conjunction "and" requires both the mechanism and the component parts to be considered as a whole, not as individual items. The legislature chose not to adopt this definition after hearing testimony that included a discussion of purchasing a computer system through several invoices in order to qualify for the exemption. Therefore, it can be inferred that the legislature envisioned the definition of "item" to be a distinct part of a whole, which is the plain meaning of the word. See *State Dept. of Administration v. Public Employees Relations Bd.*, 257 Kan. 275, 284-85, 894 P.2d 777 (1995).

Moreover, in written testimony to the Senate Assessment and Taxation Committee, the Director of PVD, in noting the fiscal note of the legislation, said, in part:

"Taxpayers that currently report items with component parts as a single item will have the incentive to break the item down as far as possible in order to take full advantage of the new exemption. For example, a computer may be broken down into a monitor, keyboard, etc. The impact of this occurrence cannot be quantified but is likely substantial." (Emphasis omitted.)

We confess our excerpts of legislative history have been selective; however, we have only wished to make the point that legislative history can be invoked to support the Board's interpretation as readily as the interpretation the PVD urges.

For the reasons stated, we are disinclined to overrule the Board's interpretation of K.S.A. 2000 Supp. 79-201w.

Affirmed.