NOT DESIGNATED FOR PUBLICATION

No. 124,485

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RYAN SCHREMMER,
*Appellant*,

v.

FARMERS INSURANCE COMPANY, INC., et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Ellis District Court; GLENN R. BRAUN, judge. Opinion filed August 5, 2022.
Affirmed.

*Larry G. Michel*, of Kennedy Berkley Yarnevich & Williamson, Chtd., of Salina, for appellant.

*James R. Holland, II*, of Fisher & Phillips, LLP, of Kansas City, Missouri, for appellees.

Before ATCHESON, P.J., WARNER, J, and ANTHONY J. POWELL, Court of Appeals Judge,
Retired.

PER CURIAM: Plaintiff Ryan Schremmer appeals a summary judgment the Ellis
County District Court entered in favor of Defendants Farmers Insurance Exchange, Inc.
and several related corporations on claims they fraudulently and negligently
misrepresented the income potential of a pair of insurance agencies in Hays and Russell
affiliated with the companies. Schremmer contends those representations made by two
district managers led him to invest time and money to take over the agencies and he never
earned what the managers assured him he would. Examining the properly admitted

1

summary judgment evidence in the best light for Schremmer, we conclude the challenged statements made to him were qualified rather than absolute representations that, in any event, appear to have been substantially accurate. As such, they cannot as a matter of law support the misrepresentation claims Schremmer has pursued. The district court, therefore, properly granted summary judgment.

FACTUAL AND PROCEDURAL HISTORY

Because the appeal rests on a summary judgment, the standards of review in both the district court and here dictate how we look at the relevant facts. So we set out the standards before turning to a recitation of the governing facts. See *Bouton v. Byers*, 50 Kan. App. 2d 34, 36-37, 321 P.3d 780 (2014). The standards are well known and often stated.

When considering summary judgment, the district court must view the evidence properly submitted in support of and in opposition to the motion most favorably to the party opposing the motion, here Schremmer, and give that party the benefit of every reasonable inference that might be drawn from that record. *Trear v. Chamberlain*, 308 Kan. 932, 935-36, 425 P.3d 297 (2018); *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009). The party seeking summary judgment has to show that even taking the evidence in that light, there are no genuine disputes over any material facts and it is entitled to judgment as a matter of law. *Trear*, 308 Kan. at 935; *Shamberg*, 289 Kan. at 900. Basically, the moving party submits any reasonable construction of the evidence could not permit a jury to return a verdict for the opposing party.

Even a genuine dispute about a background fact without relevance to the controlling legal issues cannot avert summary judgment. *Northern Natural Gas Co. v.*

2

*ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106 (2013). Likewise, a phony dispute about a relevant fact ginned up in opposition to a motion for summary judgment cannot save an otherwise legally deficient claim. *Christiansen v. Silverbrand*, 61 Kan. App. 2d 8, 26, 497 P.3d 1155 (2021) (Atcheson, J., concurring).

An appellate court applies the same standards in reviewing a challenge to the district court's entry of summary judgment. We, therefore, owe no particular deference to the district court's ruling, since it effectively applies a set of undisputed facts viewed favorably to Schremmer to the controlling legal principles. Summary judgment, then, presents a question of law an appellate court can assess just as well as the district court. See *Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, 584, 214 P.3d 1173 (2009).

We now turn to a recitation of the facts taken most favorably to Schremmer. In early 2018, Schremmer was recently divorced when he determined he needed to leave his job as a sales representative to better accommodate the shared custody and parenting plan for his young child. Although Schremmer had no experience in the insurance business, his cousin, who was a Farmers agent, suggested there might be an opportunity for him to take over the agencies in Hays and Russell. Schremmer followed up on that suggestion by contacting Bianca Pitts, his cousin's district manager. Pitts oversaw Farmers insurance agents in eastern Kansas and did not manage the agencies in Hays or Russell. Pitts and Schremmer, nonetheless, discussed the opportunity to take over those agencies. We get into Schremmer's account of those discussions shortly in outlining Schremmer's misrepresentation claims.

Schremmer, in turn, spoke multiple times with Steve Brazil, then the Farmer's district manager for a territory in western Kansas that included the insurance agencies in Hays and Russell. We also turn to the specifics of those conversations shortly.

3

Based principally on his discussions with Pitts and Brazil, Schremmer decided to take over the Farmers agencies in Hays and Russell. He knew the agent in Russell was retiring and the agent in Hays had left, although it's not entirely clear Schremmer understood the reasons. More pertinently, he was aware no one had been contacting policyholders insured through the Hays agency for some time.

Farmers required Schremmer to become a licensed insurance agent, so he undertook a course of study and passed an examination. The company also obligated Schremmer to maintain a physical office for each agency staffed with at least one full-time employee. To satisfy those conditions, Schremmer dedicated a substantial amount of time and made cash outlays he later estimated at $11,000. In December 2018, Schremmer signed an agreement with Farmers to operate company affiliated insurance agencies in Hays and Russell. Under the agreement, Schremmer was considered an independent contractor with Farmers rather than an employee.

Schremmer filed this action in March 2020 in Ellis County District Court and amended the petition twice—the second time in September, several weeks after Farmers gave written notice terminating the independent contractor relationship with him. The second amended petition names Farmers and four related corporations as defendants and alleges they "represented that the combined agencies [in Hays and Russell] had close to $100,000 in revenue" and "promised" Schremmer "the opportunity" to acquire a second agency in Hays. The second amended petition asserts the revenue figure was falsely inflated and Schremmer was never seriously considered for the second Hays agency, so the opportunity didn't materialize. In short, the pleading says those misrepresentations were made to induce Schremmer to handle two otherwise rudderless agencies. Schremmer sought recission of the relationship with Farmers and money damages based on those purported misrepresentations.

4

The defendants duly answered each iteration of Schremmer's petition and denied any wrongdoing or liability. Throughout these proceedings, all of the corporate defendants have been jointly represented, and we have no need to distinguish among them, so we refer to them collectively as Farmers or the defendants.

In the interests of completeness, we mention Schremmer also asserted a claim for breach of the independent contractor agreement. The parties agreed to a dismissal of that claim, and it does not figure in this appeal. The circumstances of the termination, therefore, are immaterial to the dispositive issues in front of us.

The parties conducted discovery—including the depositions of Schremmer, Pitts, and Brazil—that added detail to the terse allegations of misrepresentation in the pleadings. During his deposition, Schremmer testified Pitts described the insurance agency in Hays and the one in Russell together as a "$100,000 a year opportunity" with the potential for double that amount or more. Schremmer understood the $100,000 figure to be "a book of business," meaning an amount generated annually in commissions to the agent on existing policies. After their discussion, Pitts sent Schremmer an email on May 15, 2018, characterizing the opportunity as "pretty darn good and close to [$]100,000 revenue." Schremmer has identified those statements as one of the actionable misrepresentations made to him.

Schremmer testified that Brazil later told him he would earn $100,000 annually from the two agencies. Brazil offered the $100,000 figure at least twice as a sound estimate. According to Schremmer, he couched an inquiry to Brazil about earnings in terms of income because he was primarily concerned with what he would realize after paying overhead and wages. But Schremmer acknowledged that Brazil qualified the number by pointing out the commissions were dependent upon the policies being renewed and the policyholders could choose to take their business elsewhere. Schremmer

5

also testified Brazil mentioned problems with the agent in Hays and suggested several hundred policyholders probably were not too happy with the situation. Schremmer said he asked Brazil for documentation confirming the agencies' recent revenues but never received anything. Brazil's revenue estimates form the bases of the second actionable misrepresentation Schremmer has claimed.

Schremmer testified Brazil told him he might "have a shot" at purchasing a second agency in Hays when the agent running it retired. Schremmer recounted that about a year later, after he had been running the agencies in Hays and Russell, Brazil's successor told him the company intended to continue with three agencies in Hays, maintaining the historical configuration. Another individual took over for the retiring agent. Those statements set up the third misrepresentation Schremmer has alleged.

Schremmer has claimed that in 2019 he realized slightly more than $52,000 in commissions on existing policies against fixed monthly expenses of about $3,900 in running the two agencies. With commissions from new policies, he asserted he netted just under $14,000 in 2019 after paying those expenses. For summary judgment purposes, those figures are undisputed.

Central to one of the points on appeal, in August 2020, Schremmer described the $100,000 figures from Pitts and Brazil as "gross" revenue in answering an interrogatory from the defendants. That characterization is consistent with descriptions Schremmer made in earlier correspondence the defendants produced in support of their summary judgment motion. In February 2021, Schremmer amended the interrogatory answer and asserted the $100,000 figure referred to "net" revenue, meaning the amount left after paying expenses.

6

Asked about the change in the interrogatory answers during his deposition, Schremmer testified that when he communicated with Pitts and Brazil, neither he nor they attached the term "gross" or the term "net" to the $100,000 figure. At the time, Schremmer explained, he assumed they were talking about a gross amount, i.e., before deducting overhead and other operating expenses. But as the litigation had gone on, he concluded they must have been referring to an amount after expenses or a net amount. Schremmer never offered a more precise explanation. Brazil testified that the $100,000 referred to gross revenue without considering operating expenses. He explained that he would not have offered a net figure, since he had no way of knowing how much Schremmer would decide to spend on office rent or to pay his employees.

Citing the sham affidavit doctrine, the district court declined to give Schremmer's amended interrogatory answer any evidentiary weight and dismissed the change as a litigation tactic designed to generate an entirely artificial factual dispute. See *Mays v. Ciba-Geigy Corp.*, 233 Kan. 38, 46-47, 661 P.2d 348 (1983). The district court rejected Schremmer's reliance on several other evidentiary submissions as inadmissible hearsay—rulings he also contests on appeal.

In support of the motion for summary judgment, Farmers submitted the affidavit of Kessa Hasty, identified as a new agency specialist for the defendants whose duties included "provid[ing] support" to district managers and agents in Kansas and Missouri. In the affidavit, Hasty asserts that as of May 2018, the projected annual commissions for the two agencies being offered to Schremmer totaled $92,000. Schremmer never disputed the foundation for Hasty's representation. Schremmer argued, however, that the $92,000 figure conflicted with Brazil's deposition testimony that he estimated the commissions from the existing policies to be about $120,000 at that time. Although the figures are different, they do not create a dispute over a *material* fact—the representations to Schremmer revolved around the stated projections of $100,000. Moreover, in his

7

deposition, Schremmer acknowledged he would consider an amount over $90,000 to be "close" to the representations made to him. Brazil's higher undisclosed estimate is legally beside the point, since Schremmer never heard it or relied on it.

After reviewing the evidence properly submitted in the summary judgment papers from both sides, the district court concluded Farmers made no false representations to Schremmer about the revenue the two agencies would likely produce and did not promise or guarantee that Schremmer would obtain a second agency in Hays when its owner retired. Schremmer, therefore, failed to adduce evidence from which reasonable jurors could find the defendants made a false representation of a material fact—a necessary element of both his fraudulent and negligent misrepresentation claims. The district court granted the defendants' summary judgment motion. Schremmer has timely appealed.

LEGAL ANALYSIS

On appeal, Schremmer largely reprises arguments he submitted to the district court and suggests they were erroneously rejected. We take them up serially, adding background facts as necessary. We have already outlined the standards of review governing summary judgment.

To prove his fraudulent misrepresentation claim, Schremmer had to show: (1) Farmers made one or more false statements of existing and material fact; (2) Farmers knew the representations were false or made them recklessly without considering their truth or falsity; (3) Farmers intentionally made the statements to induce him to act upon them; (4) he reasonably relied and acted on the representations; and (5) he sustained damages as a result of that reliance. See *Stechschulte v. Jennings*, 297 Kan. 2, 19, 298 P.3d 1083 (2013) (elements of fraud). Similarly, on the negligent misrepresentation claim, Schremmer had to show:  (1) Farmers conveyed false information to him; (2)

8

Farmers failed to exercise reasonable care or competence in obtaining or communicating that information; (3) he reasonably relied on the false information; and (4) he suffered damages as a result. See *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 937, 305 P.3d 622 (2013). As we have indicated, common to both claims, a defendant must communicate false information to the plaintiff. This case pivots on that element as it pertains to the statements Pitts and Brazil made about the commissions the two agencies had generated and would likely generate. Each of them floated the $100,000 figure to Schremmer as an estimate of the annual revenue he might expect from commissions on existing policies.

The undisputed affidavit from Hasty establishes that when Pitts and Brazil discussed the agencies with Schremmer, the projected annual revenue from existing policies was $92,000. Given the summary judgment record, that figure itself is not open to interpretation or shading higher or lower. Coupled with Schremmer's deposition testimony that a deviation of more than $10,000 from the $100,000 amount would not be considered "close," the evidence shows Pitts and Brazil made what Schremmer necessarily would have treated as substantially accurate statements about the agencies' combined revenue from existing policies.

Other evidence buttresses the conclusion. Perhaps most significantly, the revenue derives from existing policies and depends upon each policyholder's decision to renew rather than obtain insurance elsewhere. According to Schremmer, Brazil informed him of that economic reality. So Schremmer knew the revenue figure was subject to change. Although Schremmer was a neophyte in the insurance business, the concept is commonsensical:  Revenue generated through commissions on a periodically renewable product will fluctuate with the number of existing consumers who choose to renew. And Schremmer knew that for some time no agent had been contacting the policyholders insured through the Hays agency about renewing. Although Brazil could have been more

9

explicit about the problem, he testified that the Hays agency still had in place enough policies that its revenue combined with the Russell agency would have exceeded $100,000. Schremmer has offered no admissible evidence calling into question those circumstances. After Brazil made his revenue representations to Schremmer, the Hays agency continued to lose policyholders during the months Schremmer prepared to take over the two agencies. Based on the communications between Brazil and Schremmer, the continuing loss was foreseeable, if not especially quantifiable. Schremmer chose to go forward anyway.

On this record, the district court correctly concluded the revenue representations Pitts and Brazil made to Schremmer were not false—or more precisely, no reasonable juror could conclude they were false. The upshot for Schremmer is legally devastating; he cannot show a material factual dispute suggesting the falsity of the key representation on which both his fraudulent and negligent misrepresentation claims rest. The claims, therefore, fail as a matter of law.

Schremmer offers several arguments to avert that result, largely retracing steps he took in the district court:

• Schremmer contends the district court refused to consider his amended interrogatory answer that he understood the representations Pitts and Brazil made described "net" rather than "gross" revenue the agencies would produce. The amendment came late in the discovery process and entailed a substantive change in the nature of Schremmer's claims—conflicting with his earlier descriptions that the claims were based on representations of revenues before, rather than after, paying the agencies' fixed operating expenses.

10

The district court refused to consider the amended interrogatory answer under what's commonly known as the sham affidavit doctrine. Basically, the doctrine precludes a party from resisting summary judgment by offering an affidavit that contradicts his or her earlier testimony or attestation and then claiming the contradiction creates a genuine dispute about a material fact. *Mays*, 233 Kan. at 46-47; *Christiansen*, 61 Kan. App. 2d at 13-14. Although typically defined and applied to a late conflicting affidavit, the doctrine also precludes the modification of interrogatory answers to create phony evidentiary disputes. 61 Kan. App. 2d at 28-29 (Atcheson, J., concurring).

We review the district court's invocation or rejection of the doctrine for an abuse of judicial discretion. *Christiansen*, 61 Kan. App. 2d at 13. A district court exceeds that broad authority if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018); *Northern Natural Gas Co.*, 296 Kan. at 935. The party asserting an abuse of judicial discretion bears the burden of proving the point. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

Here, the doctrine fits Schremmer's offer of his changed interrogatory answer on first consideration. The doctrine, however, comes with recognized exceptions when the later affidavit or modified interrogatory answer serves a legitimate purpose that is adequately explained. See *Mays*, 233 Kan. at 44 (evidence discovered after first statement may prompt legitimate revision in later affidavit); 233 Kan. at 45 (confusing or incomplete questioning in deposition generating first statement permits later clarification); 233 Kan. at 46 (second more expansive statement does not create actual conflict). Schremmer has not been forthcoming with that sort of explanation, and his deposition testimony about his evolving understanding of the $100,000 figure Pitts and Brazil offered doesn't measure up. It actually fails on its own terms.

11

At the time Schremmer relied on the representations to take over the agencies, he understood Pitts and Brazil to be referring to gross revenue. That understanding and reliance necessarily form the legal foundation for his misrepresentation claims. His reliance could not have been the result of a different understanding he arrived at long after entering into the agency agreement with Farmers. As we have explained, the district court properly concluded the representations as statements of gross revenue (consistent with Schremmer's understanding at the time) were substantively accurate and, therefore, could not support the misrepresentation claims. Assuming Schremmer truly came to believe the representations meant something else *after* he acted on his original understanding of them, that later belief could support a cause of action for misrepresentation.

In short, Schremmer's amended interrogatory answer does not create a disputed issue of material fact precluding summary judgment for Farmers.

• During his deposition, Schremmer testified that Jim Cross, who retired from the Farmers insurance agency in Russell, told him the office never generated more than $70,000 a year from its "book of business," meaning commissions on existing policies. The defendants objected to Schremmer's presentation of this statement in opposition to their summary judgment motion as inadmissible hearsay. Schremmer now says the district court erred in agreeing with the defendants. Schremmer is mistaken.

When ruling on a summary judgment motion, the district court should consider testimony that would be admissible if the declarant were testifying at trial. In other words, inadmissible hearsay cannot create a disputed issue of material fact on summary judgment, assuming the party opposing the motion has lodged a proper objection to the evidence. See *Schultz v. Schwartz*, 28 Kan. App. 2d 84, 89-90, 11 P.3d 530 (2000);

12

Supreme Court Rule 141(d) (2022 Kan. S. Ct. R. at 223). The opposing party's failure to object constitutes a waiver, just as it would at trial. But here the defendants did object.

At a trial, Schremmer could not have testified to Cross' out-of-court statement about the Russell agency's revenue if the statement were being offered for the truth of the matter asserted. See K.S.A. 2021 Supp. 60-460. That would be a classic form of inadmissible hearsay, absent a statutory exception under K.S.A. 2021 Supp. 60-460. By the same token, Schremmer's deposition testimony recounting Cross' statement was inadmissible as substantive evidence in opposition to the defendants' summary judgment motion. Schremmer would have had to offer Cross' affidavit or deposition testimony to establish the asserted fact.[*]

[*]To be thorough (perhaps to a fault), we mention that Schremmer could have testified to Cross' statement at a trial if Cross were also present and available to testify. K.S.A. 2021 Supp. 60-460(a). Either party could then call Cross as a witness to confirm or deny what Schremmer said and to face the rigors of cross-examination in front of the jury as to his own account of the out-of-court statement. The hearsay exception in K.S.A. 2021 Supp. 60-460(a) specifically applies to in-court testimony and does not cover hearsay in depositions or affidavits submitted in support of or in opposition to summary judgment motions.

• During his deposition, Schremmer testified that after he had begun running the agencies in Hays and Russell, he looked at computerized records for them that showed they didn't generate revenue approaching $100,000. He offered that testimony in opposition to the defendants' summary judgment motion. The district court declined to consider the testimony in the face of the defendants' hearsay objection. Schremmer says that was error. We, again, disagree.

In opposing summary judgment, Schremmer did not offer the records themselves and provided no evidentiary foundation for how they were compiled or used, thus sinking any suggestion they might come within the hearsay exception for business records. See

13

K.S.A. 2021 Supp. 60-460(m). Those omissions render his testimony as to the purported content of the records inadmissible hearsay. See *State v. Cremer*, 8 Kan. App. 2d 699, 700-01, 666 P.2d 1200 (1983); *Burris v. Brown*, No. 103,231, 2011 WL 135031, at *6 (Kan. App. 2011) (unpublished opinion). The district court properly declined to consider the testimony.

• Schremmer presented the deposition testimony of Tara Myers, a former Farmers agent in western Kansas, to the effect Brazil overstated the revenues of the agency she took over. In the deposition, Myers conceded she had no knowledge about what Pitts or Brazil conveyed to Schremmer about the agencies in Hays and Russell. The argument seems to be that if Brazil misled Myers—something that's not necessarily self-evident from her testimony—then that conduct is circumstantial evidence Brazil made false representation to Schremmer.

But the premise is faulty. The properly considered summary judgment record shows that Brazil's representations about the revenue from the Hays and Russell agencies were substantially correct, i.e., they were not false. Myers' testimony describing her dealings with Brazil about another agency is wholly irrelevant on that point. Even if Brazil utterly bamboozled Myers, his interactions with her do not flip a switch in this case converting otherwise demonstrably accurate statements made to Schremmer into actionable misrepresentations. Cf. *State v. Otero*, No. 114,762, 2017 WL 4183208, at *6 (Kan. App. 2017) (unpublished opinion) ("Relevant evidence makes a disputed, material fact either more or less likely true[,]" and generally should be admitted on that basis.).

• Schremmer offered a copy of a newsletter compiled by and circulated among Farmers agents and former agents reporting on the company's purported mistreatment of agents, particularly in making inaccurate revenue projections to induce them to enlist.

14

The district court declined to consider the newsletter in assessing the summary judgment motion. The district court ruled correctly.

The newsletter was offered to prove the truth of the matters asserted—Farmers misled numerous individuals contemplating becoming agents and, thus, had a practice of doing so. And it constituted inadmissible hearsay for that purpose. See *State v. Hunter*, 241 Kan. 629, 637, 740 P.2d 559 (1987) (newspaper article offered to prove truth of reported facts characterized as "classical . . . hearsay" and properly excluded as evidence). Information recited in widely disseminated periodicals, such as newspapers, may be offered to show notice to the public, an evidentiary purpose derived from the dissemination itself and wholly divorced from the truth of the reported information. See, e.g., *Hudson v. City of Shawnee*, 246 Kan. 395, 407, 790 P.2d 933 (1990) (newspaper articles reporting on upcoming road construction and closure properly admitted to show public notice and, thus, likely diminution of traffic through described area but not to prove construction would, in fact, occur). Common knowledge or notice of the defendants' purported nefariousness is not a material fact bearing on the summary judgment issues.

Moreover, the newsletter would have been irrelevant on the material issue of the falsity of the representations Pitts and Brazil specifically made about the revenue from the Russell and Hays agencies for the same reason Myers' testimony about her interaction with Brazil was inadmissible. However shabbily Farmers may have generally treated its agents as depicted in the newsletter would not alter the accuracy of the specific representations Schremmer has challenged, as established in the evidentiary record on summary judgment.

Finally, Schremmer has challenged the district court's ruling that his discussions with Brazil about acquiring a second agency in Hays were not actionable

15

misrepresentations. Schremmer agrees Brazil told him he would have the opportunity to be considered for a second agency in Hays when that agent retired in the relatively near future. The statements to Schremmer took the form of a qualified prediction of a possibility rather than a guarantee or an unconditional promise he *would* get the second Hays agency. As such, they were neither statements of an existing fact nor unequivocal promises of a future occurrence that would undergird the misrepresentation claims Schremmer has pursued. See *Gerhardt v. Harris*, 261 Kan. 1007, 1014, 934 P.2d 976 (1997) ("A promise to do something in the future, if the promisor had no intention at the time the promise was made to carry it out, is deceit, and if the promisor obtained anything of value by reason thereof, there is actionable fraud."); *Timi v. Prescott State Bank*, 220 Kan. 377, 389, 553 P.2d 315 (1976) ("To constitute actionable fraud the representation must relate to past or present fact, as opposed to mere opinions or puffing or promised actions in the future.").

Likewise, Schremmer could not have reasonably relied on Brazil's qualified statements about the second Hays agency to be a promise that he would eventually obtain that agency, which would be his third, in the area. In that respect, the summary judgment record does not support a reasonable inference Schremmer viewed his consideration for or acquisition of a third agency as an essential component of the arrangement with Farmers. That is, Brazil's representations that Schremmer would be a candidate for the second Hays agency could not reasonably be construed as a promise he would get that agency. And the statements would not be actionable on that basis, so they were legally insufficient to support Schremmer's claims.

For the reasons we have outlined, the district court properly granted summary judgment to the defendants.

To close out this appeal, we mention an alternative ground on which the district court granted summary judgment: A waiver clause in a contract addendum Schremmer signed with Farmers upon acquiring the agencies in Hays and Russell. The clause states Schremmer entered into the agreement without relying on any representations Farmers or anyone acting on its behalf may have made to him and specifically disclaims any sort of estimates or guarantees about commissions derived from existing policies.

Contracting parties can (and commonly do) limit their bargains to the terms recited in their written agreements, thus rendering any earlier negotiations or understandings legally insubstantial and unenforceable. See *ARY Jewelers, L.L.C. v. Krigel*, 277 Kan. 464, 476-77, 85 P.3d 1151 (2004); see also *SodexoMAGIC, LLC v. Drexel University*, 24 F.4th 183, 212-13 (3d Cir. 2022) (applying Pennsylvania law); Restatement (Second) of Contracts § 209 (1981). The legal interplay of those clauses and fraudulent misrepresentations inducing contractual bargains presents what has been a challenging question for other courts, and the panel is not of an entirely settled view as to the answer in the circumstances here. See *Miles Excavating, Inc. v. Rutledge Backhoe & Septic Tank Services, Inc.*, 23 Kan. App. 2d 82, 84, 927 P.2d 517 (1996); *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America*, 341 S.W.3d 323, 331-33 (Tex. 2011). But it is a question we need not tackle, so we don't. At most, the answer would yield a second and legally redundant ground for entering summary judgment.

Affirmed.