(186 P.3d 829)
No. 98,545

SCOTT CHESBRO, *Appellant,* v. BOARD OF COUNTY
COMMISSIONERS OF DOUGLAS COUNTY, KANSAS, *Appellee.*

Opinion filed June 27, 2008.

*Bill Skepnek* and *Paul T. Davis,* of Skepnek Fagan Meyer & Davis, P.A., of Lawrence, for appellant.

*Christopher F. Burger,* of Stevens & Brand, L.L.P., of Lawrence, for appellee.

Before MCANANY, P.J., GREEN and CAPLINGER, JJ.

GREEN, J.: This case began when Scott Chesbro petitioned the trial court for review of the denial by the Board of County Commissioners of Douglas County, Kansas (Board), of a residential entrance permit for Chesbro's property located near Lone Star Lake. Chesbro claimed that because his property was located adjacent to Douglas County Road 1-E, the Board should have granted him a residential entrance permit from his property to this road. Nevertheless, after determining that Douglas County (County) had acquired the portion of property abutting Douglas County Road 1-E through adverse possession, the trial court granted the Board's motion for summary judgment. Chesbro now appeals from the trial court's grant of summary judgment.

Chesbro argues that the trial court erred in granting summary judgment to the Board on its adverse possession theory. We disagree. The uncontroverted evidence in this case established that the

County had acquired the subject property by adverse possession through a belief of ownership for the requisite 15-year period under K.S.A. 60-503. Because Chesbro failed to bring forth evidence establishing a material dispute of fact as to the Board's adverse possession claim, Chesbro's argument on this issue fails.

Nevertheless, the Board argues that the trial court erred in denying summary judgment on its agreed boundary theory. Because we have determined that the trial court properly granted summary judgment to the Board on its adverse possession theory, it is unnecessary to address the Board's argument on this issue. Moreover, because the Board never cross-appealed the trial court's denial of summary judgment on the agreed boundary theory, the Board did not preserve this issue for appeal.

Finally, Chesbro argues that the trial court erred in granting summary judgment on his claim that the Board's denial of his residential entrance permit application was made in an arbitrary and capricious manner. We again disagree with Chesbro's argument. Because Chesbro's land did not abut the county road and Chesbro did not show that he had a legal right to access the road from his property, the Board was well within its authority to deny Chesbro a residential entrance permit. We agree with the trial court that the Board's decision was not arbitrary or capricious. Accordingly, we affirm.

In December 2004, Chesbro purchased 173.79 acres of real estate near Lone Star Lake in Douglas County from Alvin Fishburn. Fishburn had owned the property since at least 1972. The property is located next to land owned by the County that is a part of Lone Star Lake park. A public park access drive, Douglas County Road 1-E, runs somewhat parallel to the property line of Chesbro's property.

In May 1972, Fishburn appeared before the Board to discuss constructing a boundary line fence between his property and the northeast boundary line of the Lone Star Lake area owned by the County. Fishburn and the Board agreed to the construction of the line fence and split the costs of the materials equally. The line fence was then constructed along the boundary line where such construction was physically possible. There was at least 10 feet between the

edge of the pavement for the park access drive and the fence line. In a July 2006 affidavit, Fishburn stated that he believed the fence had been constructed more than 25 years ago. Fishburn further stated that the fence was in the same location as when it was constructed.

According to Fishburn, he intended the fence to be a boundary line fence between his property and the County's property. Fishburn attested that although the fence may have been located within his property line, it was constructed with the intention that it would mark the separation between his property and the County's property. According to Fishburn, since the fence was constructed, the County had been the only one to possess or provide any care to the property located on the County's side of the fence.

Fishburn and his wife conveyed the real estate to Chesbro with a general warranty deed. A title commitment performed before the sale showed that the property included the strip of disputed land between the fence and the public road. The County never recorded any interest in the disputed strip of land with the register of deeds office. When Chesbro purchased the property, neither Fishburn nor anyone else associated with the transaction told Chesbro that the County owned the disputed strip of land. Since he has owned the property, Chesbro has paid all property taxes on the property, including those for the disputed strip of land.

Keith Browning, the director of public works and county engineer for the County, attested that the County had treated the fence as a boundary between the two properties for more than 15 continuous years and had intended to possess and own the property on the County's side of the fence. Browning further attested that the County believed that the property on the south side of the fence was exclusively County property and had exclusively and continuously maintained the property for more than 15 years. Moreover, Charlie Nichols, the individual responsible for maintaining Lone Star Lake Park for approximately 33 years, attested that he had understood that the fence represented the boundary line between the County's property and the adjoining landowner's property. Accordingly, the County had openly and exclusively main-

tained the property on the south side of the fence for more than 15 years and had treated the property as its own.

Chesbro attested that he had seen virtually no evidence that the County had maintained the disputed strip of property other than some occasional trimming of weeds and grass directly adjacent to the public road. Moreover, Chesbro alleged that he met with Browning at the property in early 2005 and discussed where the property line was set. According to Chesbro, Browning acknowledged that the property line was at a point marked by a pin that abutted the public road.

In late 2005, Chesbro applied to the County department of public works for a residential entrance permit from his property onto Douglas County Road 1-E. After a public hearing, the Board denied Chesbro's application by a vote of 2 to 0. Chesbro then filed a notice of appeal and petition for judicial review with the trial court. Chesbro argued that the Board's denial of his application was made in an arbitrary manner because the Board had previously granted an agricultural entrance permit to Fishburn and had granted a residential entrance permit to a similarly situated landowner. Moreover, Chesbro alleged that over 25 entrance permits from privately owned property to Douglas County Road 1-E currently existed. Chesbro further argued that his property directly abutted and crossed onto the road surface of Douglas County Road 1-E and that he was entitled to a residential entrance permit to the road.

The Board moved for summary judgment and argued that the uncontroverted facts showed that Chesbro's property did not abut the park access drive based on the establishment of an agreed boundary line fence. The Board further argued that the County had gained adverse possession of the land between the boundary fence and the park access drive.

The trial court conducted a nonevidentiary hearing in September 2006. At the hearing, the parties acknowledged that the fence had been in place for at least 25 to 30 years and that the disputed strip of land was a 100-square-foot strip of property. Moreover, Chesbro's counsel told the trial court that Chesbro's testimony at trial would be that he had occasionally taken care of the disputed

strip of land; however, this evidence had been omitted from Chesbro's affidavit.

The trial court issued a written memorandum decision in December 2006. The trial court denied the Board's motion for summary judgment on its agreed boundary theory. Nevertheless, the trial court granted the Board's motion for summary judgment on its adverse possession theory. Chesbro moved for reconsideration of the trial court's decision. Chesbro argued that the trial court never addressed his claim that the Board's denial of his application for a residential entrance permit was made in an arbitrary manner. In a second written memorandum decision filed in January 2007, the trial court found that the Board's denial of the residential entrance permit was neither arbitrary nor capricious. Accordingly, the trial court denied Chesbro's motion for reconsideration.

*I. Did the trial court err in granting summary judgment on the Board's adverse possession theory?*

On appeal, Chesbro argues that the Board erred in granting summary judgment to the Board when it determined that the County was the rightful owner of the strip of property in question through adverse possession. An appellate court's standard of review in summary judgment cases is familiar:

" ' " 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' " ' [Citations omitted.]" *Korytkowski v. City of Ottawa*, 283 Kan. 122, 128, 152 P.3d 53 (2007).

"[A] party cannot avoid summary judgment on the mere hope that something may develop later during discovery or at trial. [Citations omitted.]" *Crooks v. Greene*, 12 Kan. App. 2d 62, 66, 736 P.2d 78

(1987). Mere speculation is similarly insufficient to avoid summary judgment. *Seitz v. Lawrence Bank*, 36 Kan. App. 2d 283, Syl. ¶ 8, 138 P.3d 388, *rev. denied* 282 Kan. 791 (2006).

Generally, whether title is acquired by adverse possession is a question of fact to be determined by the trier of fact. *Buchanan v. Rediger*, 26 Kan. App. 2d 59, 62, 975 P.2d 1235, *rev. denied* 267 Kan. 888 (1999). Nevertheless, when a factual determination turns on undisputed facts, it becomes a question of law for the court. See *Ruebke v. Globe Communications Corp.*, 241 Kan. 595, 605-06, 738 P.2d 1246 (1987) (recognizing that malice in defamation claim, which is ordinarily question of fact for jury, could be decided as question of law when facts not in dispute). Where there are no factual disputes, appellate review of a summary judgment order is de novo. *Roy v. Young*, 278 Kan. 244, 247, 93 P.3d 712 (2004).

The doctrine of adverse possession provides that " 'the true owner of property, who fails to protect rights of ownership against one holding in adverse possession and manifesting the same as required by statute and for the length of time fixed thereby, is considered as having acquiesced in the transfer of ownership.' [Citation omitted.]" *Buchanan*, 26 Kan. App. 2d at 62.

K.S.A. 60-503 states: "No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years." K.S.A. 60-503 changes the common-law concept of adverse possession by eliminating hostility as an essential element. See *Stark v. Stanhope*, 206 Kan. 428, 432-33, 480 P.2d 72 (1971). Under K.S.A. 60-503, adverse possession can now be acquired in Kansas either (a) under a claim knowingly adverse, *i.e.*, a hostile holding or (b) through occupancy under a belief of ownership. The possession must still be " 'open, exclusive, and continuous' " for the statutory period. *Stark*, 206 Kan. at 432.

"The doctrine of adverse possession permits the 'tacking' of possession to establish the requisite time period. . . . [O]nce the statute of limitations for adverse possession begins to run against the rightful owner of real property, the time continues even if the right-

ful owner dies or otherwise transfers the property. [Citations omitted.]" *Buchanan*, 26 Kan. App. 2d at 64.

Moreover, in a claim of title by adverse possession, every presumption is in favor of the holder of the legal title and against the claimant. The law will not allow the property of a person to be taken by another upon slight presumptions or probabilities. The facts relied upon to establish adverse possession cannot be presumed, and presumptions will not be indulged in to establish a claim of title. *Stith v. Williams*, 227 Kan. 32, 36, 605 P.2d 86 (1980).

In the instant case, the Board argued that the County had acquired the disputed strip of land by adverse possession through a belief of ownership. Thus, in order to prevail on their adverse possession claim, the Board needed to establish that the County had openly, exclusively, and continuously possessed the disputed strip of land under a belief of ownership for the requisite 15-year period. See *Stark*, 206 Kan. at 432. The County's belief of ownership must have been in good faith and reasonable under all the facts and circumstances. See *Armstrong v. Cities Service Gas Co.*, 210 Kan. 298, 309, 502 P.2d 672 (1972).

The trial court determined that the County had been in exclusive and open possession of the disputed strip of land for more than 30 years and had operated under a belief that the County had owned the land. The trial court determined that because the requisite period to establish adverse possession was 15 years under K.S.A. 60-503, the strip of land had become the County's property in 1987. In making this determination, the trial court looked to the County's payment of half the cost of the fence, Fishburn's statements in his affidavit that he believed the disputed strip of land belonged to the County, the County's maintenance of the disputed strip of land, and the affidavits of Nichols and Browning. Moreover, the trial court determined that the County's exclusive weed killing and mowing were sufficient acts to establish adverse possession when taking into consideration the particular land, its condition, character, locality, and appropriate use.

### A. Open, Exclusive, and Continuous Possession

#### 1. County's Maintenance of Property

Chesbro first attacks the trial court's decision by arguing that the County's maintenance of the property was insufficient to constitute adverse possession. Chesbro cites *Trager v. Elliott*, 106 Kan. 228, 187 Pac. 875 (1920), and *Thompson v. Hilltop Lodge, Inc.*, 34 Kan. App. 2d 908, 126 P.3d 441 (2006).

Nevertheless, both *Trager* and *Thompson* are distinguishable from the instant case. In *Trager*, our Supreme Court held that the grazing of cattle on unoccupied prairie land or the occasional cutting of grass for hay was insufficient to establish notice of a claim of exclusive possession to the holder of a tax title to such unoccupied prairie land, especially when at that time cattle and horses ordinarily pastured over all unfenced and uncultivated land. Moreover, it was the settlers' custom in the area to cut grass for hay on unoccupied lands. 106 Kan. 228, Syl. ¶ 2. In *Thompson*, the trial court held that the plaintiff's " 'maintenance of a lawn along an open boundary does not constitute an adverse holding or give sufficient notice to the owner of title to support a claim of adverse possession.' " 34 Kan. App. 2d at 910. There, however, this court noted that both the plaintiff and the defendant were caring for the disputed tract of land, and there was no indication that the plaintiffs were exclusively providing the maintenance. As a result, the plaintiff's use of the property did not give unequivocal notice to the defendant of the plaintiff's claim of title to the tract. 34 Kan. App. 2d at 910-11.

The instant case is different from both *Trager* and *Elliott* because in those cases multiple parties were possessing and maintaining the property at issue. Moreover, in those cases, the property was either unbounded or partially unbounded. In this case, however, it is undisputed that Fishburn and the County agreed and understood that the fence would be the boundary line between the two properties. As a result, the County exclusively maintained its side of the fence and Fishburn maintained his side of the fence. Fishburn, Browning, and Nichols provided uncontroverted evi-

dence in this case that the County exclusively cared for, maintained, and possessed its side of the fence for more than 15 years.

Chesbro contends that no information was provided as to how the strip of property was "maintained" in this case. Nevertheless, Nichols provided the following information in his affidavit about how the County's Lone Star Lake property had been maintained:

> "9. I have been taking care of or otherwise been responsible for the maintenance of the grounds at Lone Star Lake Park for approximately the past 33 years;
>
> "10. For more than 15 years, Douglas County has been the only one I know of who has:
>
> "a. Maintained the park property at Lone Star Lake Park;
>
> "b. Maintained the property around the park access drive within Lone Star Lake Park;
>
> "c. Maintained the ditches along side the park access drive within Lone Star Lake Park; and
>
> "d. Kept the grass cut on the Lone Star Lake Park property."

Moreover, Chesbro even acknowledged in his affidavit that the County provided "occasional trimming of weeds and grass directly adjacent to the road."

Our Supreme Court has stated that actions necessary to constitute adverse possession " 'are relative to the type and nature of the property and surrounding circumstances, taking into consideration the particular land, its condition, character, locality, and appropriate use.' " *Schaake v. McGrew, et al.*, 211 Kan. 842, 846, 508 P.2d 930 (1973). "[N]either actual cultivation nor residence is necessary to constitute actual possession where the property is so situated and is of such a type as not to admit of any permanent useful improvements, and [such] possession must be as definite as the character of the land will permit. [Citations omitted.]" *Manville v. Gronniger*, 182 Kan. 572, 578, 322 P.2d 789 (1958).

In his appellate brief, Chesbro acknowledges that the strip of disputed land is essentially a large ditch. Moreover, the record establishes that the property is located next to a public park access road on Lone Star Lake park property. Based on the character of the property, the uncontroverted evidence showing the County's exclusive maintenance of the Lone Star Lake property, including the strip of disputed land, by weed cutting, ditch mowing, and ditch

maintenance, along with the placement of the fence as a boundary between the two properties, were sufficient actions to constitute adverse possession.

Although not mentioned in Chesbro's brief, the trial court noted that Chesbro had asserted that he had occasionally taken care of the disputed strip of land. This fact was not included in Chesbro's affidavit but was proffered at the nonevidentiary hearing. The trial court determined that Chesbro's argument lacked merit because his maintenance of the property would have occurred after the County had gained the strip of land by adverse possession. The trial court's reasoning appears to be correct. By the time that Chesbro had purchased the land from Fishburn, the requisite 15-year period under K.S.A. 60-503 for adverse possession had been met. As a result, Chesbro's assertion does not defeat the Board's adverse possession claim.

### 2. Chesbro's Knowledge of Ownership

Chesbro further argues that the County's failure to record its interest in the property and Fishburn's failure to inform him of the property being possessed by the County disputes the assertion of open, exclusive, and continuous possession of the disputed strip of land.

Nevertheless, the County did not need to file a deed in order to establish that it had adversely possessed the property. A claim of adverse possession does not require possession under a deed or other muniment of title. See *Casner v. Common School District No. 7*, 175 Kan. 551, 555, 265 P.2d 1027 (1954). Moreover, Fishburn's failure to notify Chesbro of the County's ownership and possession of the property does not defeat any of the elements of adverse possession.

The undisputed evidence in this case established that a fence had been installed between the County's property and Fishburn's property (later Chesbro's property) more than 25 years before this action and was still in the same location when this action was commenced. The County and Fishburn had agreed that this was the boundary line between the two properties. The County was the only one that maintained the property on its side of the fence after

the fence was constructed. The County's exclusive maintenance was consistent with the character of the property. Based on the uncontroverted evidence in the case, the trial court properly determined that the County's possession of the property was open, exclusive, and continuous for the requisite 15-year period.

## B.   Belief of Ownership

Chesbro next attacks the trial court's decision by arguing that Browning's affidavit was insufficient to establish the County's belief of ownership in the disputed strip of land. Browning attested that the County had treated the fence "as a boundary fence between the two properties for more than fifteen continuous years, and has intended to possess and own the property on the County side of the fence, regardless of the true property line." In addition, Browning stated that the County had believed that the property on the south side of the fence was its exclusive property.

Chesbro maintains that Browning never provided an adequate foundation for his statements because Browning failed to state how long he has been employed by the County or any other basis for his belief that the County had owned the disputed strip of land. In his affidavit, however, Browning states that he is the director of public works and county engineer for the County. It is apparent that Browning, as the director of public works for the County, would have access to information concerning the County's property.

Moreover, even if there was a problem with Browning's affidavit, this was only part of the evidence provided by the Board to establish belief of ownership. Specifically, the Board provided sworn testimony from Fishburn that the fence was constructed with the intention that it would mark the boundary between Fishburn's property and the County's property and that the County had maintained the property on its side of the fence since the fence was constructed. In addition, both Fishburn's affidavit and the minutes from the Board's May 1972 meeting reflect that the County paid for half the cost of the materials to build the fence. Moreover, the Board provided sworn testimony from Nichols, who had been responsible for the maintenance of the Lone Star Lake property for

approximately 33 years, that he had always understood that the fence line separated the County's property from the adjoining landowner's property. Nichols further attested that he had always understood, intended, and acted as if the fence represented the boundary line between the County's property and the adjoining landowner's property and that the County had maintained the property on the County's side of the fence for more than 15 years and had treated the property as its own. Even if Browning's affidavit was excluded, the other evidence previously mentioned would have been more than sufficient to establish the County's belief of ownership in the disputed strip of land.

Nevertheless, Chesbro argues that he never had the opportunity to cross-examine the Board's affiants or have their in-person testimony taken because they were not listed as witnesses in the Board's expert disclosure. Nevertheless, the record shows that Browning was listed in the Board's expert disclosure. Moreover, the record is clear that Fishburn's evidence, as the former property owner during the 15-year requisite period for adverse possession, was necessary to the case. Once the Board had filed its properly supported summary judgment motion, it was incumbent upon Chesbro to come forward with specific facts showing that there was a genuine issue for trial. See K.S.A. 60-256(e). If Chesbro needed more time to conduct discovery or to develop the evidence needed to show that there was a genuine issue of material fact, he needed to invoke K.S.A. 60-256(f) which provides a procedural mechanism to raise this issue in order to prevent the entry of summary judgment.

Chesbro contends that the assertions in the affidavits provided by the Board were directly contradicted by his sworn statements that he met with Browning in early 2005 and Browning acknowledged that the property line was at a point marked by a pin that abutted the public park access road. Chesbro further stated in his affidavit that "[a]t no time did he [Browning] ever assert that the property line was at the fence line and that Douglas County owned the property between the fence line" and the public park access road.

The trial court determined that Chesbro's claim concerning Browning would be an improper application of the doctrine of laches against a governmental entity and stated:

"This kind of claim cannot be advanced against a government entity under the doctrine of laches. It cannot be said that the failure to register an interest in the property was proof of 'slackness' or the county sleeping on its rights. The county's exclusive and continued maintenance defeats that contention. Defendant has believed in good faith for more than 30 years that it owned the strip of land. This belief cannot be impeached when Defendant subsequently learned of a different purported true boundary. Further, the boundary pin no longer marks the true boundary because the true boundary, having been set by adverse possession in 1987, is now the fence line between Plaintiff's and Defendant's property."

The uncontroverted evidence in this case established that by the time that the meeting between Browning and Chesbro had occurred, the County had believed in good faith for more than the requisite 15-year period that it had owned the disputed strip of land. Browning's "acknowledgment" to Chesbro that the property line was marked by a pin many years after the County had already acquired ownership of the property through adverse possession would not operate to destroy the County's ownership and possession.

Finally, Chesbro suggests that the County's failure to pay taxes on the property in question indicates that it did not have a good faith belief in ownership of the disputed strip of land. Nevertheless, an adverse possessor is not required to pay taxes to succeed in a claim of ownership. *Graham v. Lambeth*, 22 Kan. App. 2d 805, 808, 921 P.2d 850 (1996). It is only one of the factors to consider in determining whether a claim of ownership exists or a claim is knowingly adverse. *Renensland v. Ellenberger*, 1 Kan. App. 2d 659, 664, 574 P.2d 217 (1977). Here, both parties represented to the trial court that the disputed strip of property was only 100-square feet, while Chesbro's property was 173.79 acres in its entirety. As the trial court pointed out, the County's assessment of property taxes on the strip of land amounts to 1/2200th of an acre, which is a de minimis cost.

The County's failure to pay taxes on the disputed strip of land does not dispute the evidence in this case that a fence had been

erected more than 25 years before this action with an understanding by both the County and the adjoining landowner that the fence would serve as the boundary line between the two properties. Recognizing that several factors buttressed the County's belief that it owned the disputed strip of land, the trial court stated:

"First, the fact that the county paid half the cost of a fence indicates that it believed it owned the strip of land between the fence and [the public road]. The county was not likely to pay half the cost of a fence that they believed sat on private property. Mr. Fishburn's affidavit as a landowner who lived on the other side of the fence for more than 30 years lends credibility to the county's claim of ownership. He stated that both he and [the Board] believed the strip of land to belong to the county. Mr. Fishburn would have been intimately aware of what was happening on the strip of land for more than 30 years, and his recollections must not be discounted.

"Second, the county's exclusive mowing of and killing of weeds on the strip of land demonstrates its belief of ownership on the strip of land, as well as announcement of this belief of ownership to the entire world. The county is not likely to maintain land it does not believe it owns. The testimony of Mr. Nichols, an employee who has maintained the grounds in close proximity to the strip of land for more than 33 years, as well as the testimony of Mr. Browning, the county's director of public works, credibly supports [the Board's] claim of exclusivity over the 15-year statutory period required to gain a property by adverse possession. [Chesbro] offers nothing in the way of rebuttal evidence to refute the two employees' claims."

The trial court thoroughly considered all of the evidence presented in both the Board's motion for summary judgment and Chesbro's response and properly concluded that the uncontroverted evidence established that the County had a good faith belief of ownership. In opposing the Board's motion for summary judgment, Chesbro had the burden to come forward with some evidence to establish a material dispute of fact. See *Glenn v. Fleming*, 247 Kan. 296, 304, 799 P.2d 79 (1990). "A genuine issue of fact exists only if a controverted fact has controlling legal force as to a controlling issue. [Citations omitted.]" *Schultz v. Schwartz*, 28 Kan. App. 2d 84, 87, 11 P.3d 530, *rev. denied* 270 Kan. 900 (2000). " ' "If the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of a material fact." ' [Citations omitted.]" *P.W.P. v. L.S.*, 266 Kan. 417, 423, 969 P.2d 896 (1998). Here, Chesbro never brought forth any evidence to

establish a material dispute of fact concerning the County's good faith belief of ownership for the requisite 15-year period. Based on the trial court's well-reasoned decision, the grant of summary judgment on the Board's adverse possession claim was proper.

## II. Did the trial court err in denying summary judgment on the Board's agreed boundary theory?

In addition, the Board argues that Chesbro's property does not abut the road because the parties have agreed to the boundary between their properties. This argument was raised in their motion for summary judgment, but the trial court denied summary judgment on this theory. Because we have determined that the trial court properly granted summary judgment to the Board on its adverse possession theory, it is unnecessary to address the Board's argument on this issue.

Moreover, our Supreme Court has held that before an appellee may present adverse rulings to the appellate court, the appellee must file a cross-appeal. If an appellee does not file a cross-appeal, the issue is not properly before the appellate court and may not be considered. *Cooke v. Gillespie*, 285 Kan. 748, 755, 176 P.3d 144 (2008); see K.S.A. 60-2103(h). Further, this court has stated that an appellate court may review a denial of a motion for summary judgment on appeal when asserted as a cross-appeal. It is necessary that a cross-appeal be perfected in order to obtain appellate review of the adverse decision. If no cross-appeal is filed, the trial court's undisturbed rulings become a final ruling when the case is finally adjudicated. *Grimmett v. S & W Auto Sales Co.*, 26 Kan. App. 2d 482, 484, 988 P.2d 755 (1999). Because the Board never cross-appealed the trial court's denial of summary judgment on this issue, the Board has not preserved this issue for appeal.

## III. Did the trial court err in determining that the Board's decision was not arbitrary or capricious?

Finally, Chesbro argues that the trial court erred in finding summary judgment on his claim that the Board's denial of his entrance permit application was made in an arbitrary and capricious manner. K.S.A. 77-621(c)(8) provides that agency action may be set aside if

it "is otherwise unreasonable, arbitrary or capricious." "An agency's action is 'arbitrary and capricious' if it is unreasonable or 'without foundation in fact.' [Citation omitted.]" *Zinke & Trumbo, Ltd. v. Kansas Corporation Comm'n,* 242 Kan. 470, 475, 749 P.2d 21 (1988).

Importantly, the appellant has not provided this court with the Board's decision denying his application for a residential access permit, the minutes from the hearing where the Board denied the permit, or any other evidence that would show the Board acted in an arbitrary and capricious manner. "An appellant has the burden to designate a record sufficient to establish the claimed error. Without an adequate record, the claim of alleged error fails. [Citation omitted.]" *Ellibee v. Aramark Correctional Services, Inc.,* 37 Kan. App. 2d 430, 433, 154 P.3d 39, *rev. denied* 284 Kan. 945 (2007).

Moreover, based on the limited record before this court, we cannot say that the Board's decision was unreasonable or without foundation in fact. Our Supreme Court has held that a right of access to and from a public street or highway is one of the incidents of ownership of land abutting the street or highway. *Teachers Insurance & Annuity Ass'n of America v. City of Wichita,* 221 Kan. 325, 330, 559 P.2d 347 (1977). In order for a landowner to have this right of access, he or she must own land abutting that street or highway. *Spurling v. Kansas State Park & Resources Authority,* 6 Kan. App. 2d 803, 804-05, 636 P.2d 182 (1981).

Determining that the Board's decision was not arbitrary and capricious because Chesbro had no legal right to access the public park access road from his property, the trial court aptly stated:

"One of the paramount incidents of property ownership is the right to exclude others. *Kaiser Aetna v. U.S.,* 444 U.S. 164, [62 L. Ed. 2d 332,] 100 S. Ct. 383 (1979). Because Plaintiff [Chesbro] does not own land abutting East 715 Road, Defendant [the Board] is well within its rights as a property owner to exclude Plaintiff for whatever reason. Because Plaintiff lacks a legal right to access, denial of that access is neither arbitrary nor capricious, but merely an exercise of a property owner's right to exclude.

"Defendant's denial of Plaintiff's request for a residential access permit was a reasoned, rational decision supported by Defendant's property ownership and Kansas law. This court's finding that Defendant owned the strip of land by adverse possession extinguished any legal right of access the Plaintiff might have had and

made moot any discussion of an alleged arbitrary denial of Plaintiff's request for a residential access permit. Plaintiff had no legal right to access East 715 Road from his property, so consequently Defendant was not obliged to allow access."

The trial court's reasoning was proper. The evidence in this case established that the County owned the land abutting the public park access road and that Chesbro's property did not abut the road. As a result, Chesbro had no right of access to and from the public park access road, and the Board could deny Chesbro's application. Although Chesbro alleges that other similarly situated property owners had been granted residential entrance permits, there is no evidence in the record that would support these statements. Assertions in an appellate brief are not sufficient to satisfy inadequacies in the record on appeal. *Smith v. Printup*, 254 Kan. 315, 353, 866 P.2d 985 (1993). As a result, Chesbro's argument on this issue fails.

Affirmed.